160 So. 720

## ALABAMA GREAT SOUTHERN R. CO. v. INDEPENDENT OIL CO.

7 Div. 310.

Supreme Court of Alabama.

March 28, 1935.

Goodhue & Lusk, of Gadsden, for appellant.

Joe Brown, of Gadsden, and Haralson & Son, of Fort Payne, for appellee.

KNIGHT, Justice.

Suit to recover damages for the failure of the appellant to deliver to the plaintiff, appellee, a car of gasoline, which the appellant, as a common carrier, received from the Cotton Belt Railroad Company for transportation and delivery to the Boswell Oil Company at Collinsville, Ala.

It appears that the Boswell Oil Company was both consignor and consignee of said shipment. The gasoline was shipped from Shreveport, La., on a straight bill of lading issued by Cotton Belt Railroad Company.

The plaintiff stated his case in a number of counts, but the court, on demurrer, held all counts insufficient except those numbered and lettered A, B, and 1. Counts A, B, and 1 each declared on a bill of lading for failure to deliver the goods.

The defendant filed some fifteen or sixteen pleas, to which the plaintiff filed a general and special replication. The defendant's demurrer to the special replication was overruled, and thereupon it filed a number of rejoinders, to which the plaintiff demurred, but this demurrer was overruled. The case finally went to the jury on counts A, B, and 1 of the complaint, and upon defendant's pleas 1 to 15, and plaintiff's replications 1 and 2, and defendant's rejoinders thereto.

There were verdict and judgment for plaintiff, and defendant prosecutes this appeal from such judgment.

It appears without dispute in the evidence that plaintiff contracted to purchase of Boswell Oil Company, a nonresident of the state, a car of gasoline of a certain quality; that this gasoline was shipped, upon a straight bill of lading from Shreveport, La., consigned to the vendor at Collinsville, Ala.; that the vendor drew draft upon the plaintiff, and attached the bill of lading covering said shipment for the purchase price of the gasoline;

that, upon the arrival of the gasoline at Collinsville, Ala., the plaintiff procured from the People's Bank of Collinsville, to which the draft with bill of lading attached had been sent for collection, the said bill of lading, paying the bank the amount of said draft.

The bank duly transferred and assigned the bill of lading to the plaintiff. With this bill of lading in its possession, the plaintiff demanded of the defendant delivery of the gas, at the same time offering to pay freight charges, and for "pipe line," but the defendant's agent, at Collinsville, refused to accept same, and declined to deliver the car of gas. No other demand was made by plaintiff for delivery of the gas. A short while thereafter, one or two days, while the gas was still in the car on defendant's track, the plaintiff returned the bill of lading to the People's Bank, and reclaimed the money he had paid for the bill of lading and gas, and the same was promptly returned to him. After the draft and bill of lading were returned, the Boswell Oil Company repossessed the gas, and had it shipped to Atlanta, Ga., and there sold it to another party. The car of gasoline actually reached Collinsville on March 1, 1932, and by direction of the Boswell Oil Company was reconsigned to the Spur Distributing Company at Atlanta, Ga., on March 3, 1932.

It appears that the refusal of defendant to deliver the car of gas to the plaintiff was due to the fact that the defendant insisted the plaintiff had not provided any facilities to unload the gas from the car at any point at Collinsville, where defendant, under the provisions of its insurance contracts, could make delivery, and that this was fully known to the plaintiff. The testimony on this point was in conflict, however.

Among the rejoinders filed by the defendant to plaintiff's second replication were 4 and 5, in the following words:

"4. And for further rejoinder to replication No. 2 the defendant says that the plaintiff received from said bank the full amount it had paid the bank in obtaining the draft and bill of lading in the first instance and the plaintiff therefore rescinded its agreement to purchase said gasoline and hence cannot recover in this suit for any failure or refusal of the defendant to deliver it to the plaintiff.

"5. For further rejoinder on this behalf the defendant says that the plaintiff purchased said car of gasoline from the Boswell Oil Company, but upon defendant's failure and refusal to deliver the same to the plaintiff, the plaintiff rescinded its contract of purchase and received back all it had paid toward the purchase of said gasoline and thereafter the Boswell Oil Company ordered the defendant to reconsign said car of gasoline and ship it to the Spur Distributing Company at Atlanta, Ga., and that in accordance with this reconsignment order the defendant caused said gasoline to be delivered to a connecting carrier and shipped to the Spur Distributing Company at Atlanta, Ga., and hence the plaintiff should not recover in this suit any damages on account of the failure or refusal of the defendant to deliver said gasoline to the plaintiff."

■■ The evidence, without conflict, shows that the plaintiff, upon the refusal of defendant to make delivery of the car of gasoline, returned the bill of lading issued by the defendant to the Boswell Oil Company, covering the shipment, to the bank and reclaimed the money it had paid for the bill of lading, and the bank, which was the agent of the Boswell Oil Company in making the collection and in indorsing the bill of lading to the plaintiff, accepted from the plaintiff the return of the bill of lading, and restored to the plaintiff the consideration paid by it for the gas. This action of the plaintiff and the said Boswell Oil Company, the latter acting by its agent, the People's Bank, was a complete rescission of the contract of purchase and sale of the gasoline, and left the contracting parties in the same position as if there had been no such sale and purchase. Confessedly the gasoline when delivered to the common carrier for transportation to Collinsville, Ala., was the property of the Boswell Oil Company, and remained its property until plaintiff had paid the draft, and secured a transfer of the bill of lading. When, thereafter, by mutual agreement of the seller and purchaser, the contract of sale and purchase, for whatever cause superinduced, was rescinded, the status of the transaction was the same as if no contract of sale and purchase had been made.

"Generally speaking, the effect of rescission is to extinguish the contract. The contract is annihilated so effectually that in contemplation of law it has never had any existence, even for the purpose of being broken. Accordingly, it has been said that a lawful rescission of an agreement puts an end to it for all purposes, not only to preclude the recovery of the contract price, but also to prevent the recovery of damages for breach of the contract." 6 R. C. L. § 323, p. 942.

And in 13 Corpus Juris, p. 623, § 683, it is stated in the text: "Generally speaking re-

scission abrogates the contract not partially but completely, and after a binding election to rescind, a party cannot insist upon rights thereunder; but each of the parties is returned to his previously existing rights."

Under the evidence, whatever contract was made by the transportation companies for the delivery of the car of gasoline at Collinsville, Ala., was made with the Boswell Oil Company, and this contract contemplated the transportation and delivery of the car of gasoline to the Boswell Oil Company, or a purchaser of it at the point of destination, and the Boswell Oil Company was, and continued to be, the owner of the gasoline until plaintiff acquired the bill of lading at Collinsville, Ala. When the plaintiff thereafter returned the bill of lading and received back the money it had paid for the same, the contract of sale was completely rescinded, and plaintiff's position was then the same as if it had never purchased or received the bill of lading in the first instance; and, of course, it was thereafter without right under that contract to sue defendant for a failure to deliver the gasoline.

Plaintiff rather complains that the court erred, to its prejudice, in overruling its demurrers to defendant's special rejoinders, that it was thereby forced to take issue on the same as though the matters set up therein constituted a defense to the action. In this the plaintiff is mistaken. It was not forced to any such action. If it was of the opinion that the matters of defense set up in the rejoinders were not proper answer to its replications, it should have declined to join issue on the same. Section 6431 of the Code pointed plaintiff to his proper course. However, one or more of the rejoinders did not present an immaterial or improper issue, as the plaintiff supposes. For instance, special rejoinders 4 and 5 presented a complete defense to the action as presented by plaintiff's pleading. Under the facts, as developed on the trial, the plaintiff mistook his action, if indeed it had one against the defendant. If it had any action against the defendant, under the facts of the case, that action was in case for a breach of duty, not for the breach of a contract which the plaintiff had elected to rescind. Plaintiff cannot rescind a contract and at the same time sue for benefits accruing to him thereunder. 13 Corpus Juris, § 683, p. 623.

We are therefore at the conclusion that, under the evidence in the case, the defendant was entitled to the general affirmative charge,

which was requested by it, and the court erred in refusing the same.

Having reached this conclusion, it is unnecessary to consider the other questions presented by the record.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.